```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____
CAMMY SHEPPARD,

                Plaintiff,         06-CV-6660T

     v.                             **DECISION**
                                                  **and ORDER**
JO ANNE B. BARNHART, Commissioner
of Social Security

                Defendant.
_____

## INTRODUCTION

Plaintiff Cammy Sheppard ("Sheppard") brings this action seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner") claiming that the Commissioner improperly denied her application for Childhood Disability Benefits under sections 202(d), 223, and 1614(a)(3)(A) and Supplemental Security Income benefits ("SSI") as provided in Title XVI of the Social Security Act ("Act").[1] Specifically, Sheppard alleges that the decision of an Administrative Law Judge ("ALJ")was erroneous because it was not supported by the substantial evidence contained in the record.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Sheppard opposes the defendant's motion.

---

[1]This case (formerly civil case 03-CV-0603-A(Sr)) was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated December 27, 2006.

**BACKGROUND**

On December 2, 1999, plaintiff Cammy Sheppard, at the time 25 years old, applied for SSI/Childhood Disability Benefits, with a protective filing date of October 27, 1999 claiming that she had become disabled on September 1, 1979 due to borderline intellectual functioning.  Sheppard's application for benefits was denied, as was her request for reconsideration.  Thereafter, plaintiff, represented by an Erie County Department of Social Services paralegal, requested an administrative hearing which was held on November 25, 2002 before ALJ Timothy M. McGuan.  By decision dated April 14, 2003, the ALJ denied plaintiff's application.  Thereafter, Sheppard's appeal of the ALJ's decision to the Social Security Appeals Board was denied, and on August 8, 2003, plaintiff filed this action.

**DISCUSSION**

I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison

v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Monguer v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). Defendant asserts that her decision was reasonable and is supported in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of his claim which would entitle [her] to relief," judgment on the pleadings may be appropriate. See, Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Because the court determines that the findings of the Commissioner are supported by substantial evidence, judgment on the pleadings is hereby granted for the defendant.

   II. <u>The Commissioner's decision to deny Plaintiff benefits is supported by substantial evidence on the record.</u>

   A.  <u>Statutory Standards</u>

The SSI program is a federal program that provides benefits to needy, aged, or disabled individuals who meet certain statutory income and resource limitations.  42 U.S.C. § 1381.

Under Section 402(d)(1)of the Act, "[e]very child ... of an individual entitled to old-age or disability benefits" is entitled to benefits, if the child--

(A) has filed an application for child's insurance benefits,

(B) at the time such application was filed was unmarried and ... is under a disability ... which began before he attained the age of 22, and

(C) was dependent on such individual ... at the time of such death. For an individual entitled to adult child disability benefits, the period of entitlement generally ends the "third month following the month in which his disability ceases." 42 U.S.C. § 402(d)(1)(G)(i). A claimant is considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must be of such severity that the claimant is not only unable to do his previous work but cannot, considering [her]

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. Id. at § 423(d)(2)(A).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. See 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of

performing any other work. Brown v. Apfel, 174 F.3d 59, 62 (2d Cir.1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996)). The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proving the last step. Brown, 174 F.3d at 62.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "(1) objective medical facts and clinical findings; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability; and (4) claimant's educational background, age, and work experience." Id . (citing Mongeur, 722 F.2d at 1037).

To determine if a claimant between the ages of three and eighteen is mentally retarded, Listing 112.05 requires 1) a valid verbal, performance, or full scale IQ of 60 through 70; and either 'a physical or other mental impairment imposing an additional and significant limitation of function' or 'documented marked impairments in age-appropriate social or personal functioning or difficulties in maintaining concentration, persistence, or pace.'

Listing 112(D)(10) provides:

> IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test

> results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above.

B. <u>There is Substantial Evidence in the Record to Support the ALJ's Decision that Claimant is not Disabled within the Meaning of the Act</u>

The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 1979 and concluded that although plaintiff suffered from borderline intellectual functioning, mild depressive order, learning disorder, amnestic disorder and limited reading ability, those conditions did not rise to the level of an impairment listed in Appendix 1, Subpart P, Regulation No. 4 of the Social Security Regulations. In doing so, the ALJ properly evaluated the medical record, and gave appropriate weight to the opinions of plaintiff's treating physicians and examining physicians.

The ALJ determined that plaintiff's mental impairment did not meet or equal Listing 12.05 (mental retardation). (Tr. 19). The record shows that plaintiff's full scale IQ scores in February and October of 1982 were 82 and 81 respectively. (Tr. 185, 119). Sheppard's lowest scores were in 1985 when she scored a 60 on the performance IQ test and a 64 full scale score. (Tr. 185) IQ tests administered in June 1988 show a performance score of 73 and full scale score of 71. (Tr. 11, 83, 182). January 1993 IQ tests show scores of 76 (verbal), 69 (performance), and 72 (full scale).

(Tr. 11, 190). 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c), provides that where more than one IQ is customarily derived from the test administered, the lowest of these is used in conjunction with 12.05. Assuming, *arguendo*, that her lowest IQ score of 60 from 1985 was valid, she would also need to have a significant impairment documented to meet the SSA's definition of mentally retarded under Listing 112.05 in order to be found disabled and unable to work.

The issue is whether the ALJ's determination that the claimant retained the residual functional capacity to perform requirements of her past relevant work or other work existing in significant numbers in the national economy was supported by substantial evidence.

The term "residual functional capacity" is defined in the regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. (20 C.F.R. §§ 404.1545 and 416.945 and Social Security Ruling 96-8p).

In making this determination, the ALJ considered all symptoms, including pain, and the extent to which those symptoms could reasonably be expected as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p. The ALJ also considered medical opinions from acceptable medical sources

which dealt with the nature and severity of the impairment and resulting limitations.

The ALJ relied upon the opinion of Dr. Thomas Dickinson, Ph.D., as a result of a psychological assessment performed on the claimant on January 17, 2003 at that time age 28. He diagnosed the claimant with depressive disorder, not otherwise specified, learning disorder, not otherwise specified, amnestic disorder, not otherwise specified, borderline intellectual functioning and reading disorder (third grade level). It was Dr. Dickinson's opinion at that time that the claimant would be able to follow and understand simple job directions and perform tasks of a repetitious type with moderate supervision. He recommended support of psychological therapy and referral to the office of vocational rehabilitation for job counseling. (Tr. 21, 235-236).

The ALJ found that plaintiff's severe impairments (borderline intellectual functioning, mild depressive disorder, learning disorder, amnestic disorder, and limited reading ability) did not prevent her from working. (Tr. 24). The medical and testimonial evidence supported the ALJ's finding. Dr. Hill opined that plaintiff was able to perform simple calculations and follow simple directions. (Tr. 206). Dr. Burnett opined that plaintiff was capable of performing simple, unskilled jobs. (Tr. 213). Dr. Dickinson opined that plaintiff was able to follow and understand simple job directions and perform tasks of a

repetitious type with adequate supervision. (Tr. 235). Dr. Dickinson went on to state that plaintiff was able to work consistently and in a reliable manner and would only have mild difficulties dealing with co-workers and customers beyond routine situations. (Tr. 235).

The ALJ evaluated plaintiff's testimony and found her not to be entirely credible. (Tr. 24). Based on the claimant's testimony, he found her able to care for her personal needs, use public transportation, cook, perform household chores, shop for groceries, and handle payment of her rent and bills. (Tr. 41-42, 44, 152-153, 161, 235). The ALJ noted that plaintiff claimed that she was able to work but she did not have a job because employers were not hiring and she did not want to burden her mother with caring for her children. (Tr. 36-37, 45). Also, the reason she did not complete school was due to a pregnancy and not her learning difficulties. (Tr. 231).

The Court must uphold findings of the Commissioner (ALJ) as to any fact if supported by substantial evidence and such finding shall be conclusive. See 42 U.S.C. § 405g; Aponte v. Secretary of Health and Human Services, 728 F.2d 588, 591 (2d Cir. 1984) ("it is the function of the Commissioner [ALJ], not [the reviewing court] to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant."). I find substantial evidence in the record to support the ALJ's conclusion

that the plaintiff's testimony as to her limitations and inability to work were not fully credible.

The ALJ found that since the plaintiff did not have any past relevant work, the burden shifted to the Commissioner to establish her ability to perform other work.  (Tr. 22).  Perez v. Chatter, 77 F.3d 41, 46 (2d Cir. 1996).  The ALJ properly considered the claimant's age, education, and the vocationally relevant past work experience in conjunction with the medical-vocational guidelines of Appendix 2 of Subpart P of the regulations containing a series of rules that would direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's residual functional capacity and vocational profile.

 The ALJ properly concluded that the claimant's ability to perform work at all exertional levels was not significantly compromised by her non-exertional limitations and applying § 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant was not disabled.  The ALJ also found that there are a significant number of jobs in the national economy that the claimant can perform given her age, education, and residual functional capacity.

Substantial evidence exists in the record which supports the ALJ's conclusion that plaintiff was not disabled during the relevant period and, therefore, the Commissioner's decision is affirmed.

**Conclusion**

Because the court finds that the Commissioner's decision was made in accordance with the applicable law, and was supported by substantial evidence in the record, the court hereby grants judgment on the pleadings in favor of the defendant. Plaintiff's motion for judgment on the pleadings is denied.

ALL OF THE ABOVE IS SO ORDERED.

                                      s/Michael A. Telesca
                                         MICHAEL A. TELESCA
                                   United States District Judge

Dated: Rochester, New York
        January 18, 2007